# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION<br><br>and<br><br>STATE OF OREGON *EX REL* CORY STREISINGER, DIRECTOR OF THE DEPARTMENT OF CONSUMER AND BUSINESS SERVICES, in her official capacity,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES JOHN RASK,<br><br>Defendant. | CASE NO. CV '06 . 162<br><br>CONSENT ORDER OF PERMANENT INJUNCTION, ANCILLARY EQUITABLE RELIEF, AND CIVIL MONETARY PENALTY AGAINST JAMES JOHN RASK |

## I.

## INTRODUCTION

The United States Commodity Futures Trading Commission ("CFTC") and the State of Oregon Department of Consumer and Business Services ("DCBS") filed the Complaint in this civil action against James John Rask ("Rask"). The Complaint seeks injunctive and other equitable relief for violations of the antifraud and exchange trading provisions of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*, as well as violations of the registration and antifraud provisions of the Oregon Securities Law, Oregon Revised Statutes §§ 59.055, 59.165, and 59.135.

1

## II.

## CONSENTS AND AGREEMENTS

To effect settlement of this action without a trial on the merits or further judicial proceedings, Rask consents to the entry of this *Consent Order of Permanent Injunction, Ancillary Equitable Relief, and Civil Monetary Penalty Against James John Rask* ("Order"). By consenting to this Order, Rask: (1) acknowledges service upon him of the summons and Complaint in this action; (2) admits this Court's personal and subject matter jurisdiction over him and this action; (3) admits that venue properly lies with this Court; and (4) waives the entry of findings of fact and conclusions of law in this action pursuant to Fed. R. Civ. P. 52.

Rask agrees that: (1) he will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or finding or conclusion contained in this Order, or creating, or tending to create, the impression that this Order is without a factual basis; and (2) no agent or employee of Rask acting under his authority or control shall take any action or make or permit to be made any public statement denying, directly or indirectly, any of the findings or conclusions in this Order or creating, or tending to create, the impression that any allegation in the Complaint or this Order is without factual basis and Rask shall undertake all steps necessary to ensure that all of his agents and employees understand and comply with this agreement. Nothing in this provision shall affect Rask's: (1) testimonial obligations; or (2) right to take any other appropriate legal positions in other proceedings in which either the CFTC or the DCBS is not a party.

Rask waives: (1) all claims that he may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412 (2000), relating to or arising from this action, and any right under EAJA to seek costs, fees, and other expenses relating to or arising from this proceeding; and (2) any claim of Double Jeopardy based upon the institution of this proceeding

or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief. All parties to this Order waive all rights of appeal from this Order.

By consenting to the entry of this Order, Rask neither admits nor denies the findings of fact or the conclusions of law in this order, or the allegations of the Complaint, except as to jurisdiction and venue, which he admits. However, Rask agrees that the findings of fact and the conclusions of law in this Order, and the allegations of the Complaint, shall be taken as true and correct and be given preclusive effect without further proof in any bankruptcy proceeding filed by, on behalf of, or against Rask, or in any proceeding to enforce this Order. Rask also agrees that he shall provide immediate notice of any bankruptcy filed by, on behalf of, or against him in the manner required by Part V of the Order.

Rask consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order. Rask affirms that he has read this Order and agrees to this Order voluntarily, and that no promise or threat of any kind has been made by the CFTC or DCBS or any member, officer, agent, or representative thereof, or by any other person, to induce his consent to this Order, other than as set forth specifically herein.

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. This Court therefore directs the entry of a permanent injunction, orders to pay restitution and a civil monetary penalty, and other equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

## III.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision

of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

2.   The CFTC has jurisdiction over the transactions in foreign currency alleged herein. Pursuant to Sections 2(c)(2)(B) of the Act and 4(a), 7 U.S.C. §§ 2(c)(2)(B) and 6(a), an agreement, contract or transaction in foreign currency that is a contract of sale of a commodity for future delivery, that is offered to, or entered into with a person that is not an eligible contract participant must be conducted on or subject to the rules of a board of trade designated or registered by the CFTC as a contract market or derivatives transaction execution facility for such commodity, and executed or consummated by or through a contract market, unless the counterparty to the transaction is one of the six regulated entities designated under Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2.   Orion was not a proper counterparty who could offer and/or enter into foreign currency futures transactions with persons who are not eligible contract participants, i.e., retail customers.

3.   This Court also has jurisdiction over this action pursuant to Section 6d(1) of the Act, 7 U.S.C. § 13a-2, which provides that whenever it shall appear to any State that the interests of the residents of the State have been, are being, or may be threatened or adversely affected because of such violations of the Act, the State may bring a suit in the district courts of the United States to enjoin such acts or practices and to enforce compliance with the Act, or to obtain such other and further relief as the court deems appropriate, including the Oregon Securities Law claims brought pursuant to Section 12(e) of the Act, 7 U.S.C. § 16(e), over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.   Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Rask resides in and transacted business in the District of Oregon, and the acts

and practices in violation of the Act and the Oregon Securities Law occurred within this District, among other places.

## IV.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.     Findings of Fact**

**Rask Fraudulently Solicited Customers**

5.      From at least December 21, 2000 to August 2002, Rask fraudulently solicited retail customers throughout the United States and elsewhere to send funds to Orion International, Inc. ("Orion") for the purpose of engaging in foreign currency futures transactions by participating in the Orion Fund.  Rask solicited these customers to engage in illegal foreign currency futures transactions and participated in a massive fraud to misappropriate millions of dollars from the Orion Fund participants.

6.      Rask personally solicited customers to participate in the Orion Fund and directed customers to access an Internet website having an address of www.orionfx.com ("Orion Website").  In his solicitations, Rask represented to investors that their funds would be pooled with the funds of other investors for the purpose of engaging in the trading of foreign currency futures. Rask solicited investors to send funds to domestic and foreign accounts under control of Orion, Russell Cline (Cline"), and others.  Orion and Cline are defendants in a related pending action. alleging the same fraudulent scheme.  The case is styled *CFTC et al. v. Orion International, Inc., et al.*, No. CV 03 603 KI (D.Ore. filed May 7, 2003).

7.      Rask represented to customers that their funds would be transferred to Orion's trading account at Currency Management Corporation PLC, ("CMC"), a trading firm located in London, England, immediately after they were received by Orion.  Rask told investors that they could verify that their funds were received for investment and check the status of their

investment in the Orion Fund by accessing their individual account balance sheets through the Orion Website.

8.     Although Rask represented that the customer funds would be immediately transferred to CMC, only a portion of those funds were transferred to CMC. This portion of customer funds was deposited into several accounts at CMC and the accounts incurred consistent monthly losses. To the extent that profits were made, those profits were offset by trading losses. Virtually the entire amount of customer funds not lost in trading was subsequently transferred to offshore bank accounts under the control of Orion and Cline.

9.     Rask fraudulently solicited 44 persons to send funds totaling $3,409,985 to bank accounts controlled by Cline and others for the purpose of engaging in foreign currency futures transactions and participated in a scheme to misappropriate those funds. Rask intended that each of the 44 persons rely on his fraudulent solicitations regarding misrepresentations of profit and risk of loss as detailed below. Most, if not all, of these 44 persons relied on Rask's fraudulent misrepresentations to send funds to bank accounts controlled by Cline and others for the purpose of engaging in foreign currency futures transactions. None of these 44 persons have obtained the return of their funds.

**Misrepresentations of Profit**

10.     As part of his solicitations, Rask claimed that investors in the Orion Fund made extraordinary profits. Rask represented to customers that the Orion Fund had been profitable every month and has either met or exceeded its expected earnings of at least 96% per year in the first four years since its inception and commencement of trading.

11.     Rask represented to investors that they could expect a return on their investment of at least 8% per month and that the Orion Fund had provided an average return in excess of 150% per year for its investors.

6

12.     Contrary to Rask's representations of profits, many investors were unable to make trading profits through their investment in the Orion Fund because their funds were not transferred to CMC for the purpose of engaging in foreign currency futures transactions. Instead, Orion, Cline, Rask, and others misappropriated customer funds. To the extent that some customer funds were transferred to Orion's trading accounts at CMC, foreign currency futures transactions in those accounts resulted in consistent monthly trading losses.

**Misrepresentations of Risk**

13.     In addition to profit misrepresentations, Rask misrepresented the risk of loss associated with trading foreign currency futures contracts by making material statements minimizing the risk of loss.

14.     Rask represented to potential investors that risk is substantially minimized because Orion only commits an average of 20% of its pool of funds to any trade positions in progress.

15.     Rask also represented that Orion always placed stop loss protection orders simultaneously when a position was opened so no open trade could ever experience severe or unexpected loss.

16.     Rask's representations of minimal risk of loss to customers and potential customers were materially false because the risk of loss in trading futures on foreign currency is high and there is no guarantee against risk of loss.

**B.     Rask Misappropriated Investor Funds**

17.     Contrary to Rask's representations, investors' funds sent to Orion to engage in foreign currency futures transactions were not immediately transferred to Orion's trading accounts at CMC or any trading firm. Customer funds were deposited in various domestic and offshore bank accounts under the control of Orion, Cline, and others and were not used for the

7

purpose of engaging in foreign currency futures transactions. Instead, Rask, Orion, Cline, and others misappropriated customer funds for their personal use and the use of others.

18.    Rask instructed some investors to deposit their funds for investment in the Orion Fund into a bank account at the Bank of America in the name of DIA and VB Revocable Express Trust ("Orion Trust Account"). Rask knew that only customer funds were deposited in the Orion Trust Account and that those funds were to be immediately transferred to Orion's trading accounts at CMC.

19.    Approximately $9.3 million was deposited into the Orion Trust Account between April 2000 and March 2002. Instead of being sent to Orion's trading accounts at CMC, almost all of these funds were either transferred to bank accounts controlled by Orion, Cline, Rask, and others or used to pay for personal expenses, personal goods and services, or payments to individuals and entities unrelated to foreign currency futures trading.

20.    Rask misappropriated customer funds from the Orion Trust Account and other accounts controlled by Cline purportedly to pay his own salary and commission payments totaling $1,627,015. Rask also misappropriated customer funds by receiving $338,550 in cash "bonus" payments from other onshore and offshore bank accounts containing customer funds and controlled by Cline.

21.    Rask also misappropriated customer funds that were transferred from the Orion Trust Account to a bank account under the control of Rask at Bank of America in the name of Trans Pacific Leasing LLC ("Trans Pacific Leasing Account"). Rask misappropriated funds from this account by approving transfers of funds to pay for Cline's personal expenses and extravagant lifestyle, including over $750,000 for automobile related purchases and more than $64,000 for an N-Lite laser machine for wrinkles. He also directly signed checks totaling over

8

$475,000 drawn on the Trans Pacific Leasing Account for another person's personal and non-foreign currency futures trading related business.

22. Rask received ill-gotten gains totaling $1,965,565 that were derived from the misappropriation of customer funds.

## C.    Rask Offered Illegal Off-Exchange Futures Contracts

23.    Rask solicited persons to send their funds to Orion for the purpose of engaging in foreign currency futures transactions by participating in the Orion Fund. These transactions were illegal off-exchange foreign currency futures contracts.

24.    Rask solicited investors to enter into foreign currency futures transactions because those transactions entailed the purchase or sale of commodities for future delivery at prices or using pricing formulas that were established at the time the contracts were initiated, and that could have been fulfilled through offset, cancellation, cash settlement or other means to avoid delivery. Neither the Orion Fund itself, as the actual party being offered the contracts, nor the underlying Orion Fund customers had any commercial need for the foreign currency. Indeed, neither the Orion Fund nor the underlying investors anticipated taking or in fact took delivery of the foreign currencies the Orion Fund may have purchased as a consequence of the Orion Fund's investments. Instead, the Orion Fund and Orion's customers, through the Orion Fund, entered into these transactions to speculate and profit from anticipated price fluctuations in the markets for these currencies.

25.    In soliciting investors for Orion in the Orion Fund, Rask offered foreign currency futures contracts with the Orion Fund and through the Orion Fund with the individual customers. The Orion Fund is not an eligible contract participant. At least some, if not most of, the underlying individual investors in the Orion Fund were not eligible contract participants.

**Rask Offered And Sold Unregistered Securities**

26.     Since at least December 21, 2000 to at least August 2002, Rask solicited members of the public to purchase interests or investments in the Orion Fund.  Rask offered and sold investments in the Orion Fund by informing customers that their funds would be pooled with the funds of others in the Orion Fund, that gains created by trading would be applied to the total value of the pool of money, and that the gains would be pro-rated to each customer's account based on the percentage of the pool which the investor's funds represent.

27.     The investments in the Orion Fund offered and sold to members of the public by Rask involved persons investing money in a common enterprise with other investors and with the investors expecting profits on their investments to be made through the management and control of Orion, Cline, Rask and others.  These investments therefore constituted investment contracts under the Oregon Securities Laws.

28.     The offer and sale of such investment contracts are securities interests that were not registered with the Securities and Exchange Commission.  Neither Orion, Cline, Rask, nor anyone else, registered these security interests with DCBS as securities required to be licensed under the Oregon Securities Law.  Rask also was not licensed with DCBS as a broker-dealer, investment adviser, or salesperson under the Oregon Securities Law.

**Rask Engaged In Securities Fraud**

29.     The foregoing oral and written fraudulent representations and the misappropriation of funds by Rask were made in connection with the purchase or sale of a security, or by a person who receives consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale.

30.     In connection with the offer and sale of Orion Fund securities, Rask employed a scheme to defraud investors by, among other things, making false representations that all

investor funds would be deposited in the Orion Fund trading account and used for foreign currency futures trading, by making false representations that the pool's trading was profitable and that investors' accounts increased in value monthly, and, instead, misappropriating investors' funds.

## B.      Conclusions of Law

### Rask Committed Fraud In Connection With Futures Transactions

31.     From at least December 21, 2000 to at least August 2002, Rask, in or in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a) of the Act, 7 U.S.C. 7 U.S.C. § 6b(a), cheated or defrauded or attempted to cheat or defraud customers or prospective customers, willfully made or caused to be made false statements to customers or prospective customers, and willfully deceived or attempted to deceive customers or prospective customers by, among other things, misrepresenting the profits and risks associated with commodity futures trading and misappropriating customer funds, all in violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2), and Regulation 1.1(b), 17 C.F.R. § 1.1(b).

### Rask Solicited Illegal Off-Exchange Futures Contracts

32.     From at least December 21, 2000 to at least August 2002, Rask, offered to enter into, entered into, executed, confirmed the execution of, or conducted an office or business in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in transactions in, or in connection with, a contract for the purchase or sale of a commodity for future delivery when: (a) such transactions were not conducted on or subject to the rules of a board of trade which has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity, and (b) such contracts were not

executed or consummated by or through a member of such contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a)

### Rask Sold Unregistered Securities

33.     From at least December 21, 2000 to at least August 2002, within or from the State of Oregon, Rask offered and sold securities as that term is defined in ORS § 59.015(19)(a) in the form of investment contracts or certificates of interest or participation in a profit sharing agreement. The securities sold by Rask were not registered under ORS §§ 59.065 through 59.095, were not exempt securities under ORS § 59.025, were not offered or sold in exempt transactions under ORS § 59.035, were not securities exempt under any rule or order promulgated by DCBS, and were not subject to notice filing under ORS § 59.049. Therefore, Rask violated ORS § 59.055.

### Rask Was Not Licensed To Offer Securities

34.     In connection with offers to sell and the sale of securities within or from the State of Oregon, as provided in paragraphs 26 through 30 above, Rask acted as a broker-dealer and/or salesperson, although not licensed pursuant to the provisions of the Oregon Securities Law or exempt therefrom. Therefore, Rask violated ORS § 59.165(1). In managing an investment or trading account in securities for other persons, for compensation, Rask acted as an investment adviser or investment adviser representative, although not licensed pursuant to the provisions of the Oregon Securities Law, nor exempt therefrom. Therefore, the defendant violated ORS § 59.165(4).

### Rask Committed Securities Fraud

35.     In connection with the purchase and sale of any security, the conduct of a securities business, or while advising, for a fee, other persons as to the value of securities or the purchase or sale of securities, as provided in paragraphs 26 and 30 above, Rask directly or

indirectly violated ORS § 59.135 by (1) employing a device, scheme, or artifice to defraud: (2) making untrue statements of material fact or omitting to state material facts which were necessary in light of the circumstances under which they were made; and (3) engaging in acts, practices, or a course of business which operated or would operate as a fraud or deceit upon any person in violation of ORS § 59.135.

## V.

## PERMANENT INJUNCTION

**A.    IT IS HEREBY ORDERED** that Rask is permanently restrained, enjoined, and prohibited from directly or indirectly:

1.    Cheating or defrauding or attempting to cheat or defraud other persons and willfully deceiving or attempting to deceive other persons in or in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, where such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a) of the Act, 7 U.S.C. 7 U.S.C. § 6b(a), by willfully making or causing to be made false statements to customers or prospective customers, and willfully deceiving or attempting to deceive customers or prospective customers by misrepresenting the profits and risks associated with commodity futures trading, issuing false reports, or misappropriating customer funds in violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2), and Regulation 1.1(b), 17 C.F.R. § 1.1(b);

2.    Offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in transactions in, or in connection with, a contract for the purchase or sale of a commodity for future delivery when: (a) such transactions have not been conducted on or subject to the rules of a board of trade which has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity, and (b) such contracts have not been executed or consummated by or through a member of such contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a);

3.    Offering or selling unregistered securities in violation of Oregon Securities Law, Oregon Revised Statutes § 59.055;

4.    Acting as an unlicensed broker-dealer and/or salesperson in violation of the Oregon Securities Law, Oregon Revised Statutes § 59.165; and

5.	In connection with the purchase or sale of any security or the conduct of a securities business: (1) employing any device, scheme or artifice to defraud; (2) making any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; (3) engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or (4) making or filing, or causing to be made or filed, to or with the Director of the Department of Consumer and Business Services any statement, report or document which is known to be false in any material respect or matter in violation of Oregon Securities Law, Oregon Revised Statutes § 59.135.

**B.	IT IS HEREBY FURTHER ORDERED** that Rask is permanently restrained, enjoined, and prohibited from directly or indirectly engaging in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), and any activity related to trading in any security, as that term is defined in Section § 59.015(19)(a) of the Oregon Securities Law ("security interest"), for any reason other than personal investment of Rask's own funds including, but not limited to, the following:

1.	Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

2.	Engaging in, controlling, or directing the trading of any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

3.	Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

4.	Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for themselves and others, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9);

5.	Introducing customers to any other person engaged in the business of commodity interest trading;

6.	Issuing statements or reports to others concerning commodity interest trading, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9);

7.    Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9);

8.    Engaging in any business activities related to commodity interest trading, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9);

9.    Soliciting or accepting any funds from any person in connection with the purchase or sale of any security interest;

10.   Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of any security interest for themselves and others;

11.   Introducing customers to any other person engaged in the business of securities;

12.   Issuing statements or reports to others concerning any security interest; and

13.   Engaging in any business activities related to securities.

**C.    IT IS HEREBY FURTHER ORDERED** that Rask is restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, any documents that relate to the named defendants in *CFTC, et al., v. Orion International, Inc., et al.*, No. 03-CV-603-KI (D.Ore. filed May 7, 2003): Orion International, Inc., Russell B. Cline, April Duffy, Samantha Vorachith aka Bangone Vorachith, and Nancy Hoyt.

**D.    IT IS HEREBY FURTHER ORDERED** that the injunctive provisions of this Order shall be binding upon Rask, any person insofar as he or she is acting in the capacity of officer, agent, servant, or attorney of Rask, and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in active concert or participation with Rask.

## IV.

## RESTITUTION, CIVIL MONETARY PENALTY, AND ANCILLARY RELIEF

**IT IS HEREBY ORDERED** that Rask shall comply fully with the following terms, conditions and obligations relating to the payment of restitution, the payment of a civil monetary penalty, and the submission of financial information.

### A.    RESTITUTION

1.    Rask shall make restitution in the amount of $2,409,885 plus pre- and post-judgment interest. The amount of restitution represents the amount of funds that persons solicited by Rask gave to Orion as a result of the course of conduct alleged in the Complaint and identified as investors in Exhibit A, attached hereto and filed under seal. Exhibit A includes the total amount of restitution owed to each investor. Omission of any investor from Exhibit A shall in no way limit the ability of such investor from seeking recovery from Rask or any other person or entity. Further, the amounts payable to each investor identified in Exhibit A shall not limit the ability of any investor from proving that a greater amount is owed from Rask or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any investor that exist under state or common law. Pre-judgment interest shall be determined by using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 662(a)(2) from December 21, 2000 to the date of this Order. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of this Order pursuant to 28 U.S.C. § 1961(a).

2.    Restitution payments under this Order shall be made to the National Futures Association ("NFA") by tendering payments to the Executive Vice President and Chief Operating Officer, or his successor, at the following address: National Futures Association, 200 West Madison, Street, Chicago, IL 60606. The NFA shall oversee Rask's restitution obligation

16

and shall make periodic distributions of funds to investors as appropriate. Based upon the amount of funds available, the NFA may defer distribution until such time as it deems appropriate. Restitution payments shall be made in an equitable fashion as determined by the NFA to the persons identified on Exhibit A.

## B.     CIVIL MONETARY PENALTY

Rask shall pay to the CFTC a civil monetary penalty in the amount of $1,965,565 plus post-judgment interest pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, upon full satisfaction of his restitution obligation. The amount of the civil monetary penalty represents the monetary gain Rask received as a result of the course of conduct alleged in the Complaint. Post-judgment interest shall accrue beginning on the date of entry of this Order. Rask shall pay this penalty by making electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order made payable to the CFTC and sent to the attention of the Office of Cooperative Enforcement, Division of Enforcement, CFTC, 1155 21st Street, N.W., Washington, D.C. 20581. Rask shall accompany payment of the penalty with a cover letter that identifies Rask, and the name and docket number of this proceeding. Rask shall simultaneously transmit a copy of the cover letter and the form of payment to the Director, Division of Enforcement, CFTC, 1155 21st N.W., Washington, D.C. 20581.

## C.     TRANSFER OF ASSETS

Rask shall not transfer, or cause others to transfer, funds or other property to the custody, possession, or control of any members of his family or any other person or entity for the purpose of concealing such funds from this Court, the CFTC, or the DCBS until his restitution and civil monetary penalty obligations have been satisfied under this Order.

## D.   DELIVERY OF DOCUMENTS

Rask shall immediately, or within such time as permitted by the CFTC and the DCBS, deliver to the CFTC and the DCBS all documents in the possession and custody of Rask relating or referring to Orion or Cline, or any of the allegations of the Complaint, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers.

## E.   COOPERATION

Rask shall cooperate fully with the CFTC, the DCBS, and any other government agency seeking to enforce the provisions of this Order in carrying out all duties with respect to his obligations to make restitution and pay a civil monetary penalty payment. Rask shall cooperate fully with the CFTC, DCBS, and any other government agency seeking to enforce the provisions of this Order in explaining his financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information as may be required by the CFTC, DCBS, and any other government agency seeking to enforce the provisions of this Order.

## F.   SWORN FINANCIAL STATEMENT

The sworn financial statement, attached hereto as Exhibit B that has been executed by Rask and that affirms and attests to the truth, accuracy, and completeness of his financial condition, is expressly made a part of this Order. The Court's approval of this Order is expressly premised upon Rask's financial condition as represented in the financial statement attached hereto as Exhibit B, which contains critical and material information upon which the CFTC and DCBS relied in agreeing to the terms of this Order. If at any time following the entry of this Order, the CFTC or DCBS receives information showing that Rask's representations to the

CFTC and DCBS concerning his financial condition were inaccurate or incomplete in any material respect as of the time such representations were made, the CFTC and DCBS may, at their sole discretion and without prior notice to Rask, petition the Court for an order requiring Rask to pay additional restitution and impose an additional civil monetary penalty. In connection with any such petition, the only issues shall be whether the financial information provided by Rask was fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made, and the amount of restitution and civil monetary penalty to be imposed. In their petition, the CFTC and the DCBS may move this Court to consider all available remedies including, but not limited to, ordering Rask to pay funds or liquidate assets, directing the forfeiture of assets, imposing sanctions for contempt of this Order, and allowing the CFTC and DCBS to engage in discovery of Rask's assets. Rask may not, by way of defense to such petition, challenge the validity of his consent or this Order, contest the allegations in the Complaint, contest the amount of restitution and interest, or assert that additional restitution or the payment of a civil penalty should not be ordered.

## VII.

## <u>SCOPE OF ORDER</u>

**A.**     **IT IS HEREBY ORDERED** that this Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action. This Order shall be interpreted and enforced according to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Oregon, and all provisions of the Act, CFTC Regulations, and, as appropriate, the Oregon Securities Law relating or referring to the obligations hereunder.

**B.**     **IT IS HEREBY FURTHER ORDERED** that the following provisions shall apply to the terms and conditions of this Order:

1.  **Notices**: All notices required by this Order shall be sent by certified mail, return receipt requested. Rask shall provide the NFA with written notice of all changes to his contact telephone number(s) and/or mailing address(es) within ten (10) calendar days of the change(s).

2.  **Waiver**: The failure of any party to this Order or of any investor at any time to require performance of any provision of this Order shall in no manner affect the right of the party or investor to enforce the same or any other provision of this Order at a later time. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

3.  **Acknowledgements**: Upon being served with a copy of this Order after entry by this Court, Rask shall sign an acknowledgment of service and serve the acknowledgment on this Court, the CFTC, and the DCBS within seven (7) calendar days. Upon being served with a copy of this Order after entry by the Court, the CFTC shall serve a copy of the Order upon the NFA within seven (7) calendar days.

4.  **Invalidation**: If any provision, or the application of any provision of this Order is held invalid, the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

5.  **Integration**: This Order incorporates all of the terms and conditions of the settlement of the parties to this Order. Nothing shall serve to amend or modify this Order in any respect, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

Done and Ordered this _23rd_ day of _Feb_ 200b, at _Portland,_

Oregon.

_____
**GARR M. KING**
**UNITED STATES DISTRICT JUDGE**

**Order Of Permanent Injunction, Ancillary Equitable Relief, And Civil Monetary Penalty
Against Defendant James John Rask consented to and approved for entry by:**

James John Rask

Dated: _____Nov. 28_____, 2005

Steven B. Ungar, Esq.
Attorney for Defendant James John Rask
Lane Powell, PC
601 SW 2nd Ave Ste 2100
Portland OR 97204

Dated: _____Nov. 28_____, 2005

_____
Richard P. Foelber
Attorney for Plaintiff
U.S. Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC 20581

Dated: _____, 2006

_(signature)_

David C. Tatman
Kirsten Anderson
Attorneys for Plaintiff
State of Oregon
Department of Consumer and Business Services
350 Winter Street N.E.
Salem, Oregon  97310

Dated: _February 6_, 2006